In the Matter of the ESTATE of Bennie O. JOHNSON, Deceased.

Duane DAVIS, Petitioner and Appellee,

v.

Henry JOHNSON et al., Respondents, and
Winnifred Spieirs Johnson, Respondent and Appellant.

Civ. No. 8874.

Supreme Court of North Dakota.

Oct. 24, 1973.

Rehearing Denied Dec. 4, 1973.

See, also, N.D., 214 N.W.2d 109.

Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, for petitioner and appellee.

Fleck, Mather, Strutz & Mayer, Bismarck, for respondent and appellant.

VOGEL, Judge.

At issue in this appeal is the construction of subparagraph 6 of paragraph SECOND of the Last Will and Testament of Bennie O. Johnson, dated January 19, 1957. It reads:

"I declare that I have created this trust for the use and benefit of my surviving wife, if any, with whom I may be living as husband and wife at the time of my death. I further declare that if I have no surviving wife at the time of my death, or if I have a surviving wife from whom I am separated, or with whom I am not living as husband and wife, then and in that event the Bennie O. Johnson Trust Estate shall not be created as a trust, and the property which would have otherwise been set over to the trustees named herein shall be distributed under the third paragraph of this my LAST WILL AND TESTAMENT, and the trustees named herein shall acquire no powers as trustees and no trust shall be established."

Under paragraph THIRD, the residue of Mr. Johnson's estate was to be divided among brothers, sisters, a niece, and nephews.

Upon the death of Mr. Johnson, his widow, Winifred M. Johnson, petitioned the county court of Traill County for a declaratory judgment construing the Last Will and Testament of Mr. Johnson, alleging that she was the sole beneficiary of the estate under the terms of the will, and that she was not disinherited. The executor, Duane Davis, answered that upon the date of death of the decedent the widow was separated from and not living with Bennie O. Johnson as husband and wife and that under the provisions of the Last Will and Testament, as admitted to probate, the petitioner was not entitled to share in the estate of the decedent. The county court entered an order on June 22, 1972, finding that the decedent and the petitioner were separated and living apart at the time of his death and that no trust was created, and the property should be distributed in accordance with paragraph THIRD of the will.

Upon appeal to the district court, District Judge Hamilton E. Englert affirmed the decision of the county court and wrote a lengthy memorandum opinion. This appeal followed.

The tangled marital affairs of Bennie O. Johnson and Winifred M. Johnson are not new to this court, having been here three times before. In re Johnson's Guardianship, 87 N.W.2d 50 (N.D.1958); Johnson v. Johnson, 104 N.W.2d 8 (N.D.1960); and Johnson v. Davis, 140 N.W.2d 703 (N.D. 1966).

Bennie O. Johnson and his second wife, Winifred M. Johnson, were married at Detroit Lakes, Minnesota, on September 16, 1955. Mr. Johnson's first wife died in January of 1952. In May of 1955, Mr. Johnson entered a hospital for treatment of delirium tremens and a liver condition as a result of his addiction to alcohol. Treatment continued in and out of several institutions until about September 9, 1955.

Mr. Johnson was acquainted with Winifred, then Winifred Spieirs, prior to going to the hospital in May of 1955 and was visited by her during the period of his hospitalization. Winifred and Bennie were

married on September 16, 1955, at a time when relatives of Bennie were petitioning for the appointment of a guardian of his person and property.

On October 18, 1955, about one month after the marriage, Bennie executed a will leaving his estate to Mrs. Johnson. The next day, October 19, 1955, the petition for appointment of a guardian was dismissed and Bennie was found to be "of sound mind" and "competent to manage his own property and affairs." It appears that the parties lived together in apparent harmony for about a year, after which they separated. On October 16, 1956, after the separation, Bennie executed a second will completely disinheriting his wife and commenced a divorce action. Bennie and Winifred next met a month or so later, on November 28, 1956, at a hearing on the divorce case. They left the courthouse together that day, apparently reconciled, but only three days later they again separated. The divorce action was discontinued and never prosecuted thereafter.

A little more than a month later, on January 19, 1957, Bennie executed the will we have here for construction, along with an inter vivos trust agreement. About two months later, on March 28, 1957, Duane Davis was appointed Bennie's guardian. That appointment was the subject of In re Johnson's Guardianship, *supra*. Johnson v. Johnson, *supra*, arose when the guardian brought an action for the annulment of the marriage of Bennie and Winifred. This court held the marriage valid. Johnson v. Davis, *supra*, was an action brought by Winifred against the guardian for support. Support was awarded and continuously paid to Winifred up to the time of Bennie's death.

After the separation on December 1, 1956, Winifred and Bennie never again cohabited, although, as the decisions cited above document the facts, Winifred went to much time and expense to establish and preserve the legal marriage. After the separation on December 1, 1956, until sometime in 1962, Winifred resided in Winnipeg, Manitoba, and from 1962 on, she resided in Los Angeles, California.

Bennie resided briefly with relatives in the Grand Forks and Buxton, North Dakota, areas. After Duane Davis was appointed guardian, in March of 1957, Bennie continued to stay with relatives in the area of Buxton until he was placed in the Lutheran Memorial Home in Mayville, North Dakota, in late 1961 or early 1962. He remained there until his death.

In 1965, Winifred applied to the district court of Traill County to supervise the inter vivos trust created by Bennie contemporaneously with the execution of the January 19, 1956, will. The district court undertook supervision of the trust on February 1, 1966. Thereafter, Winifred petitioned the district court to remove the trustees, and was successful in having a trust company appointed as successor trustee on December 30, 1966.

No contention is made in this court of undue influence upon the testator or of incompetence at the time of execution of the will, nor is any question raised as to the right of a testator to disinherit a spouse.

The issues raised by the appellant, Winifred, are:

1. Whether the lower courts erred in determining that there was no ambiguity or uncertainty in the language of subparagraph 6 of the SECOND paragraph of the Last Will and Testament of Bennie O. Johnson;

2. Whether the court erred in concluding that the Johnsons were "separated" within the provisions of the will; and

3. Whether the court erred in concluding that the Johnsons were "not living as husband and wife" within the provisions of the will.

 We are faced at the outset by a question relating to the scope of our review, specifically whether the existence of an ambiguity in the will is a question of law or of fact, or, in other words, whether

the lower court's determination that there is no ambiguity is a finding of fact which we can reverse only if "clearly erroneous" under Rule 52(a), or whether it is a question of law. We conclude that the determination of the existence or nonexistence of an ambiguity in a will is a question of law.

■ This is our rule in construing contracts. Stetson v. Investors Oil, Inc., 140 N.W.2d 349 (N.D.1966). Although we have not discussed the question in connection with construing wills, it appears to have been taken for granted that it was for the court to decide whether an ambiguity exists. See Harney v. Wirtz, 30 N.D. 292, 152 N.W. 803 (1915); Graves v. First National Bank in Grand Forks, 138 N.W. 2d 584 (N.D.1965); and In re Tonneson's Estate, 136 N.W.2d 823 (N.D.1965).

The lower court construed the will here in question as not ambiguous. Since its determination is one of law, rather than fact, it is not fortified by the "clearly erroneous" rule of Rule 52(a), N.D.R.Civ.P. It is, of course, entitled to our respect.

■ Without going into the historical and technical meanings of latent and patent ambiguities, as was done in Harney v. Wirtz, *supra,* In re Tonneson's Estate, *supra,* gives a simple test for determining whether an ambiguity exists:

"Good arguments can be made for either position, which is proof that the designation is ambiguous."

The decision goes on to say that when language used is not clear, definite, and unambiguous, extrinsic evidence is admissible to remove the ambiguity.

The appellant argues that the will contains ambiguity as to the meaning of the word "separated" and as to the term "living as husband and wife."

■ She argues that the word "separated" is subject to two meanings, one the technical meaning in matrimonial law of cessation of cohabitation by husband and wife by mutual agreement or a judicial separation under decree of court, citing Black's Law Dictionary (3d Ed.), and Fisher v. Harrison, 165 Va. 323, 182 S.E. 543 (1935), and In re Rogers' Estate, 91 N.Y.S.2d 250, 253 (S.Ct., N.Y., 1949). The other meaning, of course, is the common understanding of the term "the physical separation" of one from another. The appellant argues that the parties here were not separated in the technical, legal sense. She further argues that words used in a will drawn by one learned in the law, as this one was, should be given their accustomed technical meaning according to common legal usage, citing Saier v. Saier, 366 Mich. 515, 115 N.W.2d 279 (1962); In re Davidson's Will, 223 Minn. 268, 26 N.W.2d 223 (1947); and particularly Section 56–05–11, N.D.C.C., which provides:

"Technical words in a will are to be taken in their technical sense unless the context clearly indicates a contrary intention."

The appellee, on the other hand, cites Section 56–05–08, N.D.C.C., providing that:

"The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected and that other can be ascertained."

The appellee also points out that this court, in Johnson v. Johnson, *supra,* and in Johnson v. Davis, *supra,* as well as the attorney for the appellant in arguments before the trial court, according to the transcript, have used the word "separate" or "separation" in the ordinary sense, as distinguished from the technical sense.

In In re Rogers' Estate, *supra,* the operative language required a certain disposition of property if a named person "shall not have been divorced or separated, at her instance," from her husband. In that context, the word "separated" clearly referred to a legal separation, not a merely physical

separation. More to the point, in Fisher v. Harrison, *supra,* it was held that the term "separation" in a will may mean a separation *a mensa et thoro* [or, as our statute terms it, a "separation from bed and board" (Ch. 14–06, N.D.C.C.)]. We agree and conclude that the use of the term "separated" in the will of Bennie O. Johnson is ambiguous.

In view of our conclusion as to the remaining issue, we need not return the case to the trial court for a resolution of the ambiguity, nor need we make that decision ourselves.

■ The final issue is whether there is an ambiguity as to the meaning of the term "with whom I am not living as husband and wife."

Appellant does not contend that "living as husband and wife" is a term of art, nor that it has an express technical meaning, but cites Lipp v. Lipp, 117 S.W.2d 364 (Mo.App.1938), relating to suit money in a wife's divorce action, and as possibly of some interest, Williams v. Williams, 224 N.C. 91, 29 S.E.2d 39 (1944), which held that an inmate of a mental institution was incapable of agreeing to a separation; and Boen's Dependents v. Foster, 241 Miss. 520, 130 So.2d 877 (1961), a Workmen's Compensation Act case.

Lipp v. Lipp involved the question of whether a husband, living in the same house as his wife without cohabitation, could be required to pay her suit money. The court noted a dearth of judicial definitions of the phrase "living together as husband and wife" and continued:

" 'By the term "living together as husband and wife" is meant the dwelling together in the same house, eating at the same table, the two parties, the man and woman in question, holding themselves out to the world and conducting themselves toward each other as husband and wife.' Levy v. Goldsoll, 62 Tex.Civ.App. 257, 260, 131 S.W. 420, 421.

"It seems to the writer of this opinion that the phrase has such a well understood and established meaning that any attempt to define it would result in nothing more than repeating the words of the phrase. However, the application of the phrase to the facts of a particular case may present a difficult question."

Appellee argues that the term "living as husband and wife," as used in the will of Bennie O. Johnson, is a term of plain meaning, calling for no construction, and unambiguous. We agree, and hold that the words are to be taken in their ordinary and grammatical sense, and that a clear intention to use them in another sense cannot be found in the will. Sec. 56–05–08, N.D. C.C.

Construing the terms in their ordinary sense, we hold that the trial court was correct in finding that there was no ambiguity in their use, and that the parties were not "living as husband and wife" at the time of the execution of the will.

As our statement of facts above shows, the will in question followed an earlier will which had expressly disinherited the appellant, and was executed before the testator was declared incompetent and a little more than a month after the parties had physically separated, never to live together again. There is no question raised in this court as to competency of testator at the time of the execution of the will, and the facts clearly indicate that this will, providing that his wife was to receive nothing unless the parties were "living as husband and wife" at the time of testator's death, was unambiguous and clear.

A different question would have been presented if the separation had occurred during the period of guardianship or during a period of forcible confinement of the testator, as in Williams v. Williams, *supra.*

We hold that the will in question was ambiguous as to the meaning of the term "separated," but was unambiguous as to the meaning of the term "living as husband

and wife at the time of my death." Because the parties were not "living as husband and wife" at the time of the death of the testator, the will effectively disinherits the wife, and the judgment of the lower court is therefore affirmed.

ERICKSTAD, C. J., and TEIGEN, PAULSON and KNUDSON, JJ., concur.